UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Avalon Technologies, Inc.,

    Plaintiff,

v.                                                                            Case No. 14-14731

EMO-Trans, Inc. and
Air Canada,                                                        Honorable Sean F. Cox

    Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**
**(Doc. #8)**

    This is a commercial contract case. Plaintiff Avalon Technologies, Inc. ("Plaintiff" or "Avalon") alleges that Defendants EMO-Trans, Inc. ("EMO") and Air Canada ("Air Canada") are strictly liable for damages that Plaintiff's property sustained during its shipment from the United States to Ireland in July 2014. (Compl., Doc. #1).

    This matter is before the Court on Defendant EMO's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (Doc. #8). The motion has been fully briefed by the parties. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid in the decisional process. *See* E.D.Mich. LR 7.1(f)(1). The Court therefore orders that the motion will be decided upon the briefs. Because the Court finds that the forum selection clause relied on by Defendant is unenforceable under the Montreal Convention, the Court shall DENY Defendant's motion.

## BACKGROUND

A.     **The Parties' Business Relationship**

Avalon Technologies, a Michigan corporation, distributes computer equipment for Dell, Inc. (Compl. at ¶ 7). In or around June 2014, Avalon purchased a number of Dell servers and related equipment that it endeavored to sell to Groupon, Inc. in Dublin, Ireland. (Compl. at ¶ 8).

EMO is a global logistics and freight forwarding company that has a branch office near Detroit Metro Airport. (Compl. at ¶ 1). Avalon hired EMO to arrange for the shipment of approximately $7.5 million worth of Dell computer equipment from Michigan to Ireland. The parties had several communications and ultimately came upon an agreement for EMO to ship Avalon's computer equipment to Ireland via Air Canada. The parties' agreement is memorialized, at least partially, in a July 25, 2014 Invoice. ("Invoice," attached to Compl. at Ex. H).

On the back of EMO's July 25, 2014 Invoice to Avalon were EMO's Terms & Conditions of Service. (Compl. at ¶¶ 25-26; Compl. at Ex. I; Def.'s Mo. at Ex. A). Listed in EMO's Terms & Conditions of Service is a forum selection clause:

> **21. Governing Law; Consent to Jurisdiction and Venue.** These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of NY and/or Nassau County without giving consideration to principals [sic] of conflict of law.
> Customer and Company
>     (a) irrevocably consent to the jurisdiction of the United States District Court and the State courts of NY and/or Nassau County;
>     (b) agree that any action relating to the services performed by Company shall only be brought in said courts;
>     (c) consent to the exercise of *in personam* jurisdiction by said courts over it, and
>     (d) further agree that any action to enforce a judgment may be instituted in any jurisdiction.

(EMO Terms, Def. Mo. at Ex. A).

Among other things, Avalon alleges that it paid EMO to secure insurance for the full value of Avalon's computer equipment. (Compl. at ¶ 36). Avalon alleges that EMO did not procure the proper insurance. (Compl. at ¶ 37). Avalon claims that when the equipment was finally delivered to Groupon in Ireland on July 31, 2014, "it was determined that all 196 of the packages in which the Equipment were shipped were wet, crushed on all sides, 'V[ery] Badly Damaged' . . . ." (Compl. at ¶ 38). Groupon declined to accept the equipment, but Dell still required Avalon to pay for the equipment. (Compl. at ¶ 41-42). Plaintiff filed this suit against EMO and Air Canada on December 15, 2014. (Doc. #1).

**B.    Montreal Convention**

The parties agree that Plaintiff's claims in this case are governed by the Montreal Convention.[1] The Montreal Convention is a treaty, ratified by several nations including the United States, Canada, and Ireland, that "establishes a comprehensive regime governing liability arising from international air carriage." Sen. Exec. Rep. No. 108–8, at 2 (2003). For example, the Montreal Convention sets forth a carrier's requirements for documenting its transportation of passengers and cargo. The Montreal Convention also contains provisions concerning an air carrier's liability for damage to cargo or death of passengers in an accident. The Montreal Convention contemplates actions against a contracting carrier, like Defendant EMO, as well as actions against the actual carrier, like Defendant Air Canada.

Among other things, the Montreal Convention sets forth the jurisdictions where an action for

---

[1] The Montreal Convention is formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, (Treaty No. 106–45), opened for Signature at Montreal on 28 May 1999, available at https://www.iata.org/policy/Documents/MC99_en.pdf. It is also attached to Defendant's Motion (Doc. #8) at Exhibit E.

damages arising out of international air carriage may be brought. It provides, in pertinent part:

### Article 33 — Jurisdiction

1. An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

   . . . .

4. Questions of procedure shall be governed by the law of the court seised of the case.

(Montreal Convention, Art. 33, attached to Def. Mo. at Ex. E, p. 6). The Montreal Convention contains another jurisdictional provision, entitled "Article 46 — Additional Jurisdiction," which provides:

> Any action for damages contemplated in Article 45 must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before a court in which an action may be brought against the contracting carrier, as provided in Article 33, or before the court having jurisdiction at the place where the actual carrier has its domicile or its principal place of business.

(Montreal Convention, Art. 46).

The jurisdictional rules laid out in the Montreal Convention are mandatory. (Montreal Convention, Art. 49). "Any clause contained in the contract of carriage and all special agreements entered into before the damage occurred by which the parties purport to infringe the rules laid down by this convention, whether by deciding the law to be applied, or by altering the rules as to jurisdiction, shall be null and void." (*Id.*).

C.  **Defendant EMO's Motion to Transfer Venue**

On January 21, 2015, Defendant EMO filed a Motion to Transfer Venue Pursuant to 28

U.S.C. § 1404(a). (Doc. #8). In its motion, Defendant EMO argues that, although venue properly lies in the Eastern District of Michigan, the Court should nevertheless transfer this case to the Eastern District of New York pursuant to the parties' forum selection clause. (Def. Mo. at 3). EMO argues that the United States Supreme Court's 2013 *Atlantic Marine*[2] decision strongly supports such a transfer.

Plaintiff argues that the forum selection clause attempts to nullify Article 33's provision that grants Plaintiff the right to choose where to bring suit. Therefore, Plaintiff claims, the forum selection clause is null and void based on Articles 33, 46 and 49 of the Montreal Convention. (Pl. Resp., Doc. #19 at 2). Plaintiff also argues that the public interest factors discussed in *Atlantic Marine* do not favor transfer, and that EMO is precluded from enforcing the forum selection clause because it substantially breached the contract. (Pl. Resp. at 3).

Defendant EMO replies that Article 33 and 46 of the Montreal Convention provide Plaintiff with the choice of *country* in which to file suit, not the particular venue within a country. Defendant EMO appears to argue that, because Plaintiff chose to litigate in the United States, venue is governed by the Federal Rules of Civil Procedure. Thus, Defendant maintains, the forum selection clause is not nullified by the Montreal Convention, and enforcement of the forum selection clause pursuant to *Atlantic Marine* and 28 U.S.C. § 1404(a) is warranted here.

## APPLICABLE LAW

28 U.S.C. § 1404(a) governs motions to transfer venue based on the inconvenience of the original venue. It states: "[f]or the convenience of the parties and witnesses, in the interests of

---

[2] *Atlantic Marine Construction Co., Inc. v. United States Dist. Ct. for the Western Dist. of Texas*, 134 S. Ct. 568 (2013).

justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Typically, in considering a motion to transfer venue, a court should consider a number of "private interest" and "public interest" factors such as

> (1) the convenience of witnesses; (2) the location of relevant documents and relevant ease to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (quoting *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 182–83 (S.D.N.Y. 1995).

The presence of a valid forum selection clause between the parties may alter this traditional analysis. When a defendant moves for venue transfer pursuant to 28 U.S.C. § 1404(a), the existence of a forum selection clause between the parties is not dispositive. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). Nevertheless, "[a] forum selection clause should be upheld absent a strong showing that it should be set aside." *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 591 (1991)). "Where a valid forum-selection clause was entered into by the parties, it should ordinarily be given controlling weight." *Flagstar Bank, FSB v. Gulfstream Business Bank, Inc.*, 2013 WL 6017977 at *3 (E.D. Mich. 2013) (Roberts, J.) (citing *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F.Supp. 214, 218 (E.D. Mich. 1992)).

The United States Supreme Court has recently clarified the analysis this Court should undertake in evaluating a § 1404 motion when a valid forum selection clause exists between the

parties. *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. For the Western Dist. of Tex.*, 134 S.Ct. 568 (2013). In *Atlantic Marine*, the defendant sought to enforce a forum selection clause against a plaintiff who filed suit in Texas when the forum selection clause required the parties to litigate in Virginia. *Id.* at 575. Defendant moved to dismiss the case for improper venue pursuant to FRCP 12(b)(3), or to transfer venue pursuant to § 1406(a). *Id.* The district court denied both motions and the court of appeals denied defendant's petition for a writ of mandamus. *Id.* at 576.

The Supreme Court reversed the lower court, holding, *inter alia*, that a forum selection clause does not render a different venue "wrong" or "improper" within the meaning of § 1406(a) or Rule 12(b)(3), and that a party seeking to enforce a valid forum selection clause may do so by filing a motion under § 1404(a). *Id.* at 579. The Supreme Court went on to explain that, when considering a § 1404 motion, "[t]he presence of a valid forum selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 581.

First, "the plaintiff's choice of forum merits no weight" because the forum selection clause represents plaintiff's preemptive exercise of "venue privilege." *Atlantic Marine*, 134 S.Ct. at 581–82.

Second, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum selection clause should not consider arguments about the parties' private interests." *Id.* at 582.

Third, "when a party bound by a forum selection clause flouts its contractual obligation . . . a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ." *Id.*

Importantly, the Supreme Court stated that "[w]hen parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for

7

themselves of their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* The Supreme Court noted the simple policy behind these rules: "[w]hen the parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 583. Therefore, "in all but the most unusual cases . . . 'the interest of justice' is served by holding the parties to their bargain." *Id.*

## ANALYSIS

EMO argues that this case should be transferred to the Eastern District of New York pursuant to the forum selection clause contained on its invoice.

Plaintiff does not challenge the forum selection clause's validity as a matter of contract law. Instead, Plaintiff argues that the Montreal Convention nullifies the forum selection clause because it "alters the rules as to jurisdiction" by depriving Plaintiff of his choice of forum, as prescribed by Articles 33, 46 and 49.

EMO asserts that Article 33 of the Montreal Convention provides that Plaintiff will have his choice of *national* forum, not a particular venue within a country, as Plaintiff claims. EMO acknowledges that Article 33 designates five jurisdictions in which an aggrieved party may choose to sue for recovery of damages. But, EMO argues, once a plaintiff chooses the national jurisdiction in which he or she wishes to litigate, that nation's laws govern any further venue issues. Thus, EMO appears to argue that even though Plaintiff chose to litigate in the United States, the Montreal Convention does not mandate that Plaintiff have his choice of venue within the United States.

Numerous courts have considered the proper interpretation of Article 33 of the Montreal

Convention and its predecessor under the Warsaw Convention.[3] The consensus appears to be that Article 33 confers jurisdiction on the courts of a nation-state, rather than a particular court within that nation-state. *Smith v. Canadian Pac Airways, Ltd.*, 452 F.2d 798, 801 (2d Cir. 1971) (abrogated on other grounds by *Benjamins v. British European Airways*, 572 F.2d 913 (2d Cir. 1978)) (explaining that while some courts have construed Article 28 of Warsaw Convention as referring to judicial subdivisions within nations, "[t]he view that Article 28(1) speaks only on the national plane has nevertheless become the predominant view in the case law and in the commentaries."); *Mertens v. Flying Tiger Line, Inc.*, 341 F.2d 851, 855 (2d Cir. 1965) (abrogated on other grounds by *Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989)) ("The 'places' specified refer to the High Contracting Parties, not to areas within a particular High Contracting Party. An action may be brought, at the option of the plaintiff, in the territory of a High Contracting Party, if the domicile of the carrier, the principal place of business of the carrier, the place of business at which the contract was made, or the place of destination is within that country. Plaintiff's choice of forum within that country is governed by the internal law, with all its intricacies and complexities, not by the Warsaw Convention. Once a plaintiff files suit in a country with jurisdiction over his or her claims, that

---

[3] There is a limited amount of case law concerning the Montreal Convention and its jurisdictional provisions. However, the Montreal Convention superceded the Warsaw Convention, *Aikpitanhi v. Iberia Airlines of Spain*, 553 F. Supp. 2d 872, 874 n. 3 (E.D. Mich. 2008), and is meant to "modernize and consolidate the Warsaw Convention and related instruments." (Montreal Convention Preamble, attached to Def. Mo. at Ex. E). Thus, the Montreal Convention should be "construed consistently with the precedent developed under the Warsaw Convention and its related instruments." *In re Air Crash at Lexington, KY, Aug. 27, 2006*, 501 F. Supp. 2d 902, 908 (E.D. Ky. 2007); *see also Zydus Pharm. (USA), Inc. v. British Airways PLC Corp.*, 2013 WL 3092828 at *12 (M.D. Tenn. 2013) ("Given the relatively little case law interpreting the Montreal Convention, the Courts consider decisions involving comparable terms of the Warsaw Convention.") (internal quotations and citations omitted). Montreal Convention Article 33 is largely analogous and consistent with Article 28 of the Warsaw Convention.

9

country's procedural rules govern venue."); *Pitman v. Pan Am. World Airways, Inc.*, 223 F. Supp. 887, 889 (E.D. Pa. 1963) ("Article 28 [of the Warsaw Convention] refers to national entities and not to geographical places within the nation."); *Spencer v. Northwest Orient Airlines, Inc.*, 201 F. Supp. 504, 507 (S.D.N.Y. 1962) ("[O]nce one of the requirements of Article 28 is met . . . then a plaintiff seeking damages against a carrier may bring an action in the courts of that high contracting party as permitted by its laws."); *Pardonnet v. Flying Tiger Line, Inc.*, 233 F. Supp. 683, 688 (N.D. Ill. 1964) ("Article 28(1) determines only which nations can hear the case, but not which court within an appropriate nation.").[4] Accordingly, pursuant to Article 33, Plaintiff had the option to file suit in any country with jurisdiction pursuant to the Montreal Convention.

This confirms the proper interpretation of Article 33, but is not dispositive of Defendant's motion. Plaintiff argues that the forum selection clause "alters the rules as to jurisdiction under the Montreal Convention because it limits [Plaintiff] to filing suit in the United States" whereas, under the Convention, Plaintiff would have the option of filing suit in the United States, Canada, or Ireland.[5] Thus, Plaintiff argues, the forum selection clause is "null and void" according to Article 49 of the Montreal Convention.

---

[4] At least one court has gone further, opining that the doctrine of *forum non conveniens* cannot be invoked to transfer an action brought under the Warsaw Convention from one country to another because the "vague and discretionary" nature of *forum non conveniens* is inconsistent with the Convention's cardinal goal of "achiev[ing] uniformity of rules governing claims arising from international air transportation." *Hosaka v. United Airlines, Inc.*, 305 F.3d 989, 997 (9th Cir. 2002); *but see In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982*, 821 F.2d 1147, 1162 (5th Cir. 1987) ("[A]rticle 28(1) of the Warsaw Convention does not prevent a district court from considering and applying the doctrine of forum non conveniens.").

[5] Recall that Article 33 grants jurisdiction to the place of business through which the contract has been made (here, the United States), the domicile of the carrier (here, Canada), or the place of destination (here, Ireland). The parties do not appear to dispute that, per Article 33, jurisdiction would be proper in any of these three countries.

The Court finds that Plaintiff's position is well-taken. The Montreal Convention provides that an action for damages "must be brought, *at the option of the plaintiff*," in a State-Party as long as that nation has one of the enumerated connections to the parties. Montreal Convention, Art. 33 (emphasis added). Any pre-incident agreement that alters this jurisdictional rule is null and void. Montreal Convention, Art. 49. The forum selection clause at issue here clearly alters Article 33's jurisdictional prescription by purporting to require Plaintiff to file suit in the United States of America, namely in the State of New York. Therefore, pursuant to Articles 33 and 49 of the Montreal Convention, the Court finds that the forum selection clause is void.[6]

Furthermore, Defendant has failed to show that the Eastern District of New York is a more convenient forum than the Eastern District of Michigan. In fact, Defendant has made no attempt to make such a showing; rather, Defendant relies completely on the forum selection clause in arguing for a transfer of venue. As discussed at length above, the Court finds that the forum selection clause is void and unenforceable.

## CONCLUSION AND ORDER

Based on the foregoing, the Court shall DENY Defendant EMO-Trans's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) (Doc. #8).[7]

---

[6] The Court notes, however, that nothing in the Montreal Convention precludes a defendant from objecting to venue or moving for transfer pursuant to § 1404(a). *Mertens*, 341 F.2d at 855. For example, if Plaintiff had filed suit in California (where venue would likely be improper under § 1391), Defendant could have moved to transfer the case to a proper venue or have the case dismissed for improper venue. "[I]n such an instance the choice of forum will be governed by the internal rules of the High Contracting Party . . . ," not the Montreal Convention. *Id.*

[7] The Court declines to consider Plaintiff's alternative argument that EMO is precluded from enforcing the forum selection clause based on its alleged breach of the contract, as the Court finds that transfer is not warranted on other grounds.

**IT IS SO ORDERED.**

                                          S/Sean F. Cox
                                          Sean F. Cox
                                          United States District Judge

Dated: April 29, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 29, 2015, by electronic and/or ordinary mail.

                                          S/Jennifer McCoy
                                          Case Manager